# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| United States of America<br>v.<br>Alton Lamar Brooks<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  1:22MJ 490<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __December 2, 2022__ in the county of __Forsyth__ in the
__Middle__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:
See Affidavit

☑ Continued on the attached sheet.

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Criminal Complaint and attached affidavit in accordance with the requirements of Fed. R. Crim. P. 4.1.

/S/ RUSSELL JOHNSON
*Complainant's signature*

Russell Johnson, Special Agent, ATF
*Printed name and title*

Date: 12/09/22

*Judge's signature*

City and state: Greensboro, North Carolina

L. Patrick Auld, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SPECIAL AGENT RUSSELL JOHNSON
# IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Russell Johnson, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, state as follows:

## AFFIANT'S EXPERIENCE

1. I am an investigative or law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. As a law enforcement officer, I have used and/or participated in a variety of methods investigating firearms and narcotics related crimes, including, but not limited to, visual surveillance, witness interviews, the use of search warrants, confidential informants, undercover agents, pen registers/trap and trace devices, and mobile tracking devices. Based upon information gained through this investigation and others pertaining to firearm trafficking activities of the participant in this investigation, I am familiar with the ways firearm traffickers conduct their business. My familiarity includes the various means and methods by which firearm traffickers acquire and distribute their firearms, their use of cellular telephones, and their use of vehicles in furtherance of firearms trafficking and money transactions.

## PURPOSE OF AFFIDAVIT

3. This affidavit is made in support of an application for a criminal complaint for Alton Lamar Brooks.

4. I have probable cause to believe that Brooks did knowingly possess a firearm while being a convicted felon, in violation of 18 U.S.C. § 922(g)(1).

## THE INVESTIGATION – FACTUAL BACKGROUND

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause for a violation of a federal criminal offense, specifically 18 U.S.C. § 922(g)(1).

## PROBABLE CAUSE

6. On October 14, 2022, a reliable and compensated ATF Confidential Informant (CI) provided information regarding an individual that he/she had met who identified themselves as "Squirt."[1] This individual informed the CI that he ("Squirt") sells firearms and narcotics. "Squirt" provided the CI with a telephone number of \*\*\*-\*\*\*-7102.

---

[1] The CI was compensated by ATF for his/her services and has a history of criminal convictions including at least one felony conviction.

2

7. ATF TFO Matt La Valley queried the telephone number provided to the CI through Cashapp and saw that the telephone number was linked to "Alton Brooks" with the $Cashtag of "$dizzleman3." TFO La Valley then queried "Alton Brooks" through the Winston-Salem Police Department law enforcement database and located Alton Lamar Brooks with an alias of "Squirt." An image of Alton Brooks was shown to the CI who confirmed Alton Brooks and "Squirt" to be the same person.

8. On October 20, 2022, the CI arranged through recorded contact with Brooks a transaction of approximately two (2) ounces of marihuana. An ATF undercover agent (UC1) and the CI picked up Brooks in the 1700 block of Vargrave Street, Winston-Salem, North Carolina, walking. Brooks got into the UC vehicle. The CI introduced Brooks to UC1. UC1 drove the undercover vehicle (UCV) to a parking lot near the intersection of Gholson Avenue and Cunningham Avenue. After parking, Brooks retrieved a plastic bag containing marihuana from the front of his pants. Brooks handed UC1 a prepackaged bag of marihuana and then handed the CI an additional bag. Brooks informed the CI that the price of marihuana was $220.00. UC1 counted out $220.00 in undercover funds and handed the funds to the CI to hand to Brooks. The CI then handed UC1 the additional bag of marihuana. This transaction was audio/video recorded and funds utilized had been prerecorded.

3

9. On October 26, 2022, UC1 arranged to purchase approximately two (2) ounces of marihuana from Brooks. Brooks directed UC1 to come to the Valero gas station located at 67 Waughtown Street, Winston-Salem, North Carolina. Once UC1 arrived he contacted Brooks via telephone. Brooks then instructed UC1 to the area of Providence Place Apartments located at 1492 Gillcrest Drive, Winston-Salem, North Carolina. UC1 drove to the location and observed Brooks between apartment buildings on Frazier Way. Brooks informed UC1 to drive to the back of the apartment and park, which UC1 agreed to do. Brooks walked to the UC vehicle and got into the front seat. Brooks then provided a large plastic bag of marihuana and commented on the quality being good. UC1 then provided Brooks with $360.00 in undercover funds for the marihuana. This transaction was audio/video recorded and funds utilized had been prerecorded.

10. On October 27, 2022, UC1 arranged a firearms transaction with Brooks, who described the firearms he had in his possession as a "Glock 40" and a "nine," or 9-millimeter. The parties agreed to meet at the Valero gas station located at 67 Waughtown Street, Winston-Salem, North Carolina. UC1 and a second undercover agent, UC2, drove to the location in the UCV at which time UC1 contacted Brooks via telephone. Brooks then instructed UC1 to the area of the BP Gas Station located at 601 Peters Creek Parkway, Winston-Salem, North Carolina.

11. UC1 drove to the BP gas station where UC1 and UC2 observed Brooks coming out of the store. UC2 exited the UCV and allowed Brooks to sit in the front seat. UC2 got into the rear of the UCV. Brooks then directed UC1 to drive to the Providence Place Apartments located at 1492 Gillcrest Drive, Winston-Salem, North Carolina. The parties arrived and Brooks exited the UCV and directed UC1 and UC2 to park in the back of the apartments. UC1 drove the UCV to the back of the lot. Brooks walked toward apartment 709 and later re-emerged with another individual. Brooks and an individual later identified as                     approached the UCV. Brooks got into the front passenger seat of the UCV and provided UC1 with a black semi-automatic pistol from the front pocket of his hoodie. UC1 identified the pistol as a Hi-Point, model JCP, .40 caliber, semi-automatic pistol. Brooks informed UC1 that there was "one in the head," indicating that the firearm had a round in the chamber and was ready to fire. The parties agreed on a price of $400.00. UC1 provided Brooks with the $400.00 in undercover funds for the pistol and an additional $100.00 in undercover funds for setting up the transaction. Brooks informed UC1 that he would be in touch regarding future firearms transactions. This transaction was audio/video recorded and funds utilized had been prerecorded.

12. On October 31, 2022, ATF SA Benjamin Crocker requested that ATF SA Michael Newsome conduct an interstate nexus determination on the

5

Hi-Point Iberia Firearms JCP .40 Cal Pistol SN: 728081 purchased during the undercover transaction. Based upon review of the firearm description provided by SA Crocker, and in conjunction with his training, knowledge, and experience, nexus expert Newsome concluded that this pistol was a "firearm" as defined in 18 U.S.C. § 921(a)(3), and that it had been manufactured outside the State of North Carolina.

13. Also on October 31, 2022, ATF SA Russell Johnson was notified of a National Integrated Ballistic Information Network (NIBIN) Hit connected to the Hi-Point, .40 caliber pistol, serial number 728081 that UC1 and UC2 had purchased on October 27, 2022. NIBIN is an automated forensic technology network used by over 5,000 law enforcement agencies in the United States to link multiple events involving the same firearm. The NIBIN hit was related to a "shots fired" call, Winston-Salem Police Department (WSPD) case number 2251032.

14. SA Johnson reviewed the WSPD report. According to the report, on October 20, 2022, WSPD responded to 1019 William Drive, Winston-Salem, North Carolina. The responding officers observed the residence was struck five times by gunfire. The responding officers recovered only one .40 caliber shell casing from the scene.

15. On November 1, 2022, UC1 and UC2 met with Brooks and and purchased a personally made firearm (PMF)/Ghost gun, to include a bag

6

of ammunition, for $800.00 from Brooks, along with a $100.00 broker fee.

showed UC1 and UC2 a Springfield .45 caliber pistol during the transaction; however, he was not willing to sell it at that time. Following this purchase and after UC1 and UC2 drove off, Brooks called UC1 and stated he had another firearm for sale.

16. UC1 and UC2 went back and met with Brooks and a second individual with the initials          Brooks received a Palmetto Arms ARP from          and sold it to UC1 for $1,000.00, along with $100.00 broker fee paid to Brooks. This transaction was audio/video recorded and funds utilized had been prerecorded.

17. On November 3, 2022, ATF TFO VanKuren contacted the North Carolina Governor's Clemency Office in reference to Brooks' pardon status. It was confirmed that Brooks has not received nor applied for a pardon. Therefore, Brooks' Second Amendment Right to possess a firearm or ammunition has not been restored.

18. On November 9, 2022, UC1 and UC2 met with Brooks,            a            and two other unidentified males. Brooks sold UC1 two (2) revolvers for $1,200.00, along with a $200.00 broker fee to Brooks. UC2 purchased a stolen and loaded Springfield XD, .45 caliber pistol and a loaded Sig Sauer, 9mm pistol for $1,360.00 from            and the other two (2) males. After UC1 and UC 2 departed, Brooks called UC1 and

7

said he had another firearm for sale. While waiting for Brooks to confirm he was ready, UC1 and UC2 observed            truck drive in the direction of Brooks, and moments later Brooks said he was ready. UC1 and UC2 then pulled behind            truck and Brooks exited the passenger side carrying an ARP pistol. UC1 paid Brooks $1,000.00 for the ARP and UC2 provided him with a $40.00 broker fee. This transaction was audio/video recorded and the funds utilized had been prerecorded.

19. On November 10, 2022, ATF SA Russell Johnson was notified of NIBIN Hits connected to the Sig Sauer, model SP2022, 9mm pistol, serial number 24B287754, that UC1 and UC2 purchased on November 9, 2022. The NIBIN hits were related to WSPD case numbers 2225242, 2235733, and 2253780. On this same date, SA Johnson reviewed the three (3) WSPD reports and observed the following;

20. 2225242 - On May 25, 2022, the WSPD received an Aggravated Assault/Larceny call to 730 Ferrell Court, Winston-Salem, North Carolina. The original notification to the WSPD was received via a "ShotSpotter" alert that reported approximately 12 shots fired. "ShotSpotter" is a network of acoustic sensors that can detect, locate, and alert police to gunshot incidents. The system is in operation in more than 90 cities and uses an array of acoustic sensors that are connected wirelessly to ShotSpotter's centralized, cloud-based application to detect and triangulate gunshots. Each acoustic sensor captures

8

the precise time and audio associated with impulsive sounds that may represent gunfire. This data is used to locate the incident and is then filtered by machine algorithms to classify the event as a potential gunshot. Over the course of the WSPD investigation at Ferrell Court, police recovered approximately 16 shell casings, to include 9mm and .40 caliber casings. According to the victims, Victim 1 was socializing with Suspect 1 and let Suspect 1 inspect his firearm. Suspect 1 refused to give the firearm back and Victim 1 took Suspect 1's firearm and ran off. Suspect 1 and Suspect 2 then began firing rounds at Victim 1, failing to strike Victim 1; however, hitting additional victims' vehicles. Suspects 1 and 2 then stole Victim 1's vehicle and drove off. Eventually the suspects were identified and charged with multiple felony offenses. The cases remain pending.

21. 2235733 - On July 24, 2022, the WSPD received a "shots fired" call in which the caller stated they heard 6 to 7 gunshots at their residence and heard a vehicle speeding away. The WSPD recovered 9mm and 7.62 caliber shell casings. No arrests were made in this case.

22. 2253780 - On November 5, 2022, the WSPD received a "shots fired" call and recovered 9mm and .45 caliber shell casings. According to the report, the shots were fired at a car dealership and there was only property damage from the rounds. Surveillance video showed three males around the shooting.

9

23. On November 10, 2022, SA Benjamin Crocker requested that SA Newsome conduct an interstate nexus determination on the firearms purchased during these undercover transactions. SA Newsome was provided a description of said firearms:

- Palmetto State Armory, Pistol, PA-15 5.56 Cal, SN: SCD821060;
- ROMARM/CUGIR, Pistol, Mini Draco, 7.62, SN: ROA22PG6396;
- HS Produkt (IM Metal), Pistol, XDs, .45 Cal, SN: S3106135;
- Palmetto State Armory, Pistol, PA-15 5.56 Cal, SN: SCD825347;
- Colt, Revolver, Python, .357 Cal, SN: E74829;
- Sig Sauer, Pistol, SP2022, 9mm Cal, SN: 24B287754;
- Harrington and Richardson, Revolver, Model 732, .32 Cal, SN:AZ008284.

24. Based upon review of the firearms description provided by SA Crocker, and in conjunction with his training, knowledge, and experience, SA Newsome concluded that these handguns were "firearms" as defined in 18 U.S.C. § 921(a)(3), and that they had been manufactured outside of the State of North Carolina.

25. UC2 arranged to meet with Brooks on November 14, 2022, to purchase two (2) firearms. Brooks came to the transaction alone. Brooks sold UC2 a loaded Taurus pistol and a loaded SCCY pistol for $1,400.00. Brooks was also provided a $200.00 broker fee. This transaction was audio/video recorded and the funds utilized had been prerecorded.

26. On November 14, 2022, ATF SA Paul Johnson examined the listed firearms and their markings required under 27 CFR 478.92, which include but are not limited to the serial number, name of manufacturer, model, caliber, or

10

gauge, and, when applicable, the importer and proof marks. The firearms are described as follows:

- SCCY pistol, model CPX-1, 9mm caliber, bearing Serial Number C219141.

- Taurus pistol, model 740 Slim, .40 S&W caliber, bearing Serial Number SHW18788.

27. Based upon the above descriptions, as well as researching firearm periodicals, books, other known media, and the internal ATF database that is kept up to date on manufacturers of both firearms and ammunition, and in conjunction with the knowledge and experience of nexus expert Johnson, it was his opinion that:

- SCCY pistol, model CPX-1, 9mm caliber, bearing Serial Number C219141, was manufactured in Florida.

- Taurus pistol, model 740 Slim, .40 S&W caliber, bearing Serial Number SHW18788, was manufactured in Brazil.

28. On December 2, 2022, UC1 and UC2 arranged to meet with Brooks to purchase a firearm. Brooks came to the transaction alone. Brooks sold UC1 a loaded CZ 97B .45 caliber pistol for $1,000.00. Brooks then directed UC1 and UC2 to 2300 K Court, Winston-Salem, North Carolina, advising he had another individual who was willing to sell a firearm. UC1 and UC2 drove their UCV with Brooks in the vehicle to 2300 K Court. Once at the residence, Brooks retrieved an Anderson Manufacturing, model AM-15, .223 caliber rifle from an unidentified subject and return to the vehicle with same. UC1 and UC2

11

provided Brooks $1,200.00 for the rifle. Brooks was also provided an additional $200.00 broker fee. This transaction was audio/video recorded and the funds utilized had been prerecorded.

29. On December 2, 2022, SA Johnson examined the listed firearms and their markings, required under 27 CFR 478.92, which include but are not limited to the serial number, name of manufacturer, model, caliber, or gauge, and also, when applicable, the importer and proof marks. The firearms are described as follows

- Anderson Manufacturing pistol, model AM-15, .223/5.56 caliber, bearing Serial Number 14042621.

- Ceska zbrojovka Uhersky Brod (CZ) pistol, model 97B, .45 Auto caliber, bearing Serial Number D263652.

30. Based upon the above descriptions, as well as researching firearm periodicals, books, other known media, and the internal ATF database that is kept up to date on manufacturers of both firearms and ammunition, and in conjunction with the knowledge and experience of nexus expert Johnson, it was his opinion that:

- Anderson Manufacturing pistol, model AM-15, .223/5.56 caliber, bearing Serial Number 14042621, was manufactured in Kentucky.

- Ceska zbrojovka Uhersky Brod (CZ) pistol, model 97B, .45 Auto caliber, bearing Serial Number D263652, was manufactured in Czech Republic.

31. A criminal history inquiry revealed Brooks has been convicted of a felony offense punishable by a term of imprisonment exceeding one year. From

a review of a certified Judgment and Commitment document from the State of North Carolina, Forsyth County Superior Court, Brooks was convicted of Larceny from the Person with an offense date of December 16, 2012, and was sentenced to 8-19 months for this felony conviction on January 11, 2013. Therefore, Brooks knew that he was prohibited from possessing a firearm which had moved in interstate or foreign commerce.

## CONCLUSION

Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on December 2, 2022, within the Middle District of North Carolina, Alton Lamar Brooks committed the following criminal offense: Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1).

/S/ RUSSELL JOHNSON
Russell Johnson, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Dated: December ___, 2022
Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

_____
Honorable L. Patrick Auld
United States Magistrate Judge
Middle District of North Carolina

13